# United States Court of Appeals for the Federal Circuit

2009-1031


MICHAEL MARRIN and ETCH-IT, INC.,

                                        Plaintiffs-Appellees,

v.

JEFFREY GRIFFIN and CLAUDIA GRIFFIN,

                                        Defendants-Appellants.

-------------------------------------------------------------------------------------

JEFFREY GRIFFIN and CLAUDIA GRIFFIN,

                                        Plaintiffs-Appellants,

v.

HEIDI MARRIN, MICHAEL MARRIN,
             and ETCH-IT, INC.,

                                        Defendants-Appellees.


    Robert D. Fish, Fish & Associates, PC, of Irvine, California, argued for all appellees.  With him on the brief was Andrew Mar.

    Geoffrey A. Baker, Dowell Baker, P.C., of Oak Park, Illinois, argued for all appellants.

Appealed from:  United States District Court for the Central District of California

Judge George H. Wu

# United States Court of Appeals for the Federal Circuit

2009-1031

MICHAEL MARRIN and ETCH-IT, INC.,

Plaintiffs-Appellees,

v.

JEFFREY GRIFFIN and CLAUDIA GRIFFIN,

Defendants-Appellants.

-------------------------------------------------------------------------------------

JEFFREY GRIFFIN and CLAUDIA GRIFFIN,

Plaintiffs-Appellants,

v.

HEIDI MARRIN, MICHAEL MARRIN,
and ETCH-IT, INC.

Defendants-Appellees.

_____

Appeal from the United States District Court for the Central District of California in case nos. 07-CV-00239 and 07-CV-02100, Judge George H. Wu.

_____

DECIDED: March 22, 2010

_____


Before NEWMAN, BRYSON, and DYK, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> DYK. Dissenting opinion filed by <u>Circuit Judge</u> NEWMAN.

DYK, <u>Circuit Judge</u>.

Appellants Jeffrey and Claudia Griffin ("the Griffins") appeal from a judgment of the United States District Court for the Central District of California. The district court granted summary judgment, finding the Griffins' United States Patent No. 5,154,448 ("the '448 patent") invalid under 35 U.S.C. § 102(b) as anticipated. Marrin v. Griffin, Nos. CV07-239-GW and CV07-2100-GW, 2008 U.S. Dist. LEXIS 79708, at *1-2 (C.D. Cal. Sept. 4, 2008).

On appeal, the Griffins' primary contention is that the trial court improperly failed to treat the "for permitting" language in the preamble as a claim limitation. We affirm.

BACKGROUND

In July of 1990, Jeffrey and Claudia Griffin conceived of the idea of using a scratch-off label to mark beverage containers and cups so that attendees of a gathering or party could keep track of their beverage cups. The Griffins filed a patent application in April 1991, and the '448 patent, entitled "Scratch-Off Marking Label," issued on October 13, 1992. Claim 1 of the patent, which is representative of the four disputed claims, reads as follows:

> 1. A scratch-off label for permitting a user to write thereon without the use of a marking implement, comprising:
>
> a permanent base having a colored near side which is normally visible to the user and having a far side; and
>
> a coating of scratch-off non-transparent material having a color which contrasts with the color of the near side of the permanent base, which coating is applied directly onto the near side of the permanent base with sufficient thickness so as to obscure the color of the permanent base, and which when scratched off reveals the color of the near side of the permanent base.

'448 patent col.4 ll.35-48. The first two lines of Claim 1 comprise its preamble. Figure 1 of the '448 patent, which illustrates a beer can embodiment of the asserted invention, is reproduced below.

Figure 1 of '448 Patent



Michael Marrin formed a company, Upardi, Inc. ("Upardi"), to manufacture the labels, and containers with the labels, with the objective of securing a license from the Griffins for the '448 patent. On June 5, 2002, the Griffins entered into a license agreement with Upardi. The relationship between Michael Marrin and the Griffins broke down swiftly, due primarily to differences in opinion about the appropriate payment obligations under the license. On April 11, 2006, the Griffins notified Michael Marrin that the license was terminated. In January 2007, Michael Marrin and Etch-It, Inc., a company Michael Marrin had created to market and sell scratch-off labels, filed an action for declaratory relief against the Griffins in the United States District Court for the Central District of California seeking a determination, inter alia, that the Griffins '448 patent was invalid. Then, in March 2007, the Griffins filed suit against Michael Marrin, Heidi Marrin, and Etch-It, Inc. (collectively "Marrin") in state court, alleging that Marrin was willfully infringing the '448 patent. Marrin removed the Griffins' action from the state court to the California district court, and the two actions were consolidated.

On cross-motions for summary judgment, the district court ruled that the '448 patent was invalid as anticipated, and therefore was not infringed by Marrin. Marrin, 2008 U.S. Dist. LEXIS, at *1-2. In reaching this conclusion, the district court noted that the Griffins' "only basis for arguing against anticipation is that the preamble language is an additional limitation." Id. at *7. Based on its finding that the "preamble language is not limiting," the district court concluded that "a person of ordinary skill in the art at the time of the invention would find that the limitations of the body of the claims of the '448 patent are anticipated by one or more of" eight patents on scratch-off devices: U.S. Patent Nos. 4,241,943 ("the Malinovitz patent"); 4,637,635 ("the Levine patent"); 2,523,650 ("the Dickson patent"); 4,095,824 ("the Bachman patent"); 4,508,513 ("the Donovan patent"); 4,900,617 ("the Smith patent"); 4,299,637 ("the Oberdeck patent"); and 4,536,218 ("the Gamho patent"). Id. at *5, 7. None of these eight patents was cited during the prosecution of the '448 patent.

The Griffins timely appealed, and we have jurisdiction under 28 U.S.C. § 1295. Because this appeal is from a grant of summary judgment, we review the district court's determination de novo and view the record in the light most favorable to the non-moving party (here the Griffins). See OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1402 (Fed. Cir. 1997). Anticipation is a question of fact. Akzo N.V. v. U.S. Int'l Trade Comm'n, 808 F.2d 1471, 1479 (Fed. Cir. 1986).

DISCUSSION

The Griffins' main argument on appeal is that the preamble's "for permitting" language should have been construed as a limitation on the scope of the claims and that the asserted prior art therefore does not anticipate. The Griffins acknowledge that

the prior art disclosed scratch-off devices. However, the Griffins contend that the prior art did not disclose the ability of a user of a scratch-off device to write without the use of a marking implement, which was disclosed in the preamble to the claims of the '448 patent. The district court ruled that the "for permitting" language in the preamble was not a claim limitation based on its findings that (1) the preamble language added in the amendment only added a statement of a purpose or an intended use for the invention, and (2) the patentee did not demonstrate clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art. Marrin, 2008 U.S. Dist. LEXIS, at *2, 7. We agree.

The preamble language indicates that the intended use of the scratch-off labels was "for permitting a user to write thereon without the use of a marking implement." '448 patent col.4 ll.35-36. But use descriptions such as this are rarely treated as claim limitations. As we said in Bicon, Inc. v. Straumann Co., "[p]reamble language that merely states the purpose or intended use of an invention is generally not treated as limiting the scope of the claim." 441 F.3d 945, 952 (Fed. Cir. 2006). For apparatus claims, such as those in the '448 patent, generally patentability "depends on the claimed structure, not on the use or purpose of that structure." Catalina Marketing Int'l v. Coolsavings.com, Inc., 289 F.3d 801, 809 (Fed. Cir. 2002). Here, the preamble language only added an intended use, namely, that the scratch-off layer may be used for writing.

Clear reliance on a preamble during prosecution can distinguish a claimed invention from the prior art and render the preamble a claim limitation, id. at 808, but there was no such reliance here. The prosecution history establishes that the Griffins

did not consider the writing use for their claimed invention as being patentably significant. The Griffins state that, as filed, the original patent application included the following language for claim 1:

> 1. A scratch off marking label, comprising:
> (a) a layer of scratch off non-transparent coating, and;
> (b) a permanent base layer of such color so as to contrast with said scratch off coating;
> (c) said scratch off coating being applied directly onto said permanent layer of contrasting color, whereby upon scratching through of said scratch off coating reveals the contrasting color of said permanent layer in legible lines, thereby providing a <u>writing means</u> whereby a person can mark on the label without the need for a writing implement.

Appellants' Br. 9 (emphasis added). In revising this claim to its current form during prosecution, the Griffins explained to the examiner that "'writing means' is not an element of Applicant's claims, and does not appear in the new claims." J.A. 71 (Jeffrey A. Griffin, Amendment After Notice of Allowance (Nov. 28, 1991)). Because the Griffins expressly attested that the "writing means" language was not a claim limitation, they cannot now assert that it was such a limitation. Thus, we agree with the district court and hold that the preamble's statement of purpose does not limit the scope of the claims.

The dissent suggests that the presumption against reading a statement of purpose in the preamble as a claim limitation is inapplicable because the body of the claim makes no sense without the preamble's reference to a "label." But that was also true in a number of the cases in which we held that the statement of purpose in the preamble was not a claim limitation. In other words, the mere fact that a structural term in the preamble is part of the claim does not mean that the preamble's statement of purpose or other description is also part of the claim. For example, in <u>Catalina</u>

Marketing, the preamble's reference to a "system" was obviously part of the claims; the court held that the type of system described in the preamble was not a claim limitation. 289 F.3d at 810. In Intirtool, Ltd. v. Texar Corp., the preamble's reference to "hand-held punch pliers" was clearly part of the claim; again the court held that the preamble's description of a purpose for the pliers was not part of the claim. 369 F.3d 1289, 1296 (Fed. Cir. 2004). Similarly, in Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A., the preamble's references to a "weaving machine" were obviously part of the claims, whereas the preamble's indication of reference points to fix the direction of movement of woven fabric from the machine was held not to be a claim limitation. 944 F.2d 870, 880 (Fed. Cir. 1991).

The Griffins also now argue that the asserted prior art fails to anticipate additional limitations from the body of the claims—namely, that the patented device includes a scratch-off coating that contrasts with the color of the device's permanent base. The law of anticipation is clear: "A prior art reference anticipates a patent claim if the reference discloses, either expressly or inherently, all of the limitations of the claim." Finnigan Corp. v. Int'l Trade Comm'n, 180 F.3d 1354, 1365 (Fed. Cir. 1999). We agree with the district court that all of the limitations present in the claims of the '448 patent were present in the prior art references. In particular, the Malinovitz patent taught scratch-off technologies for parking cards. The side-by-side comparison below of the prior art Malinovitz patent and the Griffins patent is sufficient to demonstrate that the Griffins patent does not include any limitations that were not in the Malinovitz patent.

| Griffins Patent | Malinovitz (parking card) Patent |
| --- | --- |
| "a permanent base" | Teaches a "base card" (Col.4 ll.63) that the removable coating is applied to. The base card's surface is not removed when the coating is scratched off. (Col.3 ll.40-41) |
| "a coating of scratch off non-transparent material" | The scratch off coating must be non-transparent since the coating "covers" dates which are only revealed when removed. (Col.3 ll.36-41). |
| "having a color which contrasts with the color of the near side of the permanent base" | "The friable removable coating is of a different color, usually silver, than the underlying color of the card . . . ." (Col.2 ll.34-35). |

Thus, we reject the Griffins' argument that the asserted prior art fails to disclose additional limitations present in the body of the claims of the Griffins patent.

Beyond their anticipation arguments, the Griffins contend that the district court should have ruled on the issue of infringement, notwithstanding its finding that the asserted claims were invalid. This argument lacks merit. There can be no infringement of claims deemed to be invalid. Ultradent Prods., Inc. v. Life-Like Cosmetics, Inc., 127 F.3d 1065, 1069-70 (Fed. Cir. 1997).

Accordingly, we affirm the district court judgment of invalidity and non-infringement.

AFFIRMED

COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

2009-1031

MICHAEL MARRIN and ETCH-IT, INC.,

Plaintiffs-Appellees,

v.

JEFFREY GRIFFIN and CLAUDIA GRIFFIN,

Defendants-Appellants,

-----------------------------------------------------------------------------------------------

JEFFREY GRIFFIN and CLAUDIA GRIFFIN,

Plaintiffs-Appellants,

v.

HEIDI MARRIN, MICHAEL MARRIN,
and ETCH-IT, INC.

Defendants-Appellees.

Appeal from the United States District Court for the Central District of California in case nos. 07-CV-00239 and 07-CV-02100, Judge George H. Wu.

NEWMAN, <u>Circuit Judge</u>, dissenting.

I respectfully dissent, for the court has misunderstood the law of "anticipation" and has misapplied the rules of claim construction. The law of "anticipation" requires that the same invention was previously known and described in the prior art. The law of "claim construction" requires that the claims are construed in light of the specification and the

prosecution history. When the prior art does not show the same invention, correctly construed claims are not deemed "anticipated." It is incorrect to construe a claim so as to delete limitations stated in the claim—including the "preamble" clause—and then to hold the claim "anticipated" by subject matter that is excluded by the limitations stated in the preamble clause.

Nonetheless, my colleagues on this panel delete material limitations in the claim because they appear in the preamble of the claim, and then find the claim anticipated, although the claim is not anticipated when the deleted limitations are considered. These deleted limitations distinguish the invention that is described and claimed in the patent in suit. It is incorrect to construe the claims contrary to the deleted limitations so as to broaden the claims into invalidity.

DISCUSSION

Claim 1, the broadest claim of U.S. Patent No. 5,154,448, in suit, is as follows:

1. A scratch-off label for permitting a user to write thereon without the use of a marking implement, comprising:

a permanent base having a colored near side which is normally visible to the user and having a far side; and

a coating of scratch-off non-transparent material having a color which contrasts with the color of the near side of the permanent base, which coating is applied directly onto the near side of the permanent base with sufficient thickness so as to obscure the color of the permanent base, and which when scratched off reveals the color of the near side of the permanent base.

Precedent establishes that the preamble limits the claims when it distinguishes the use of the claimed article from the prior art, see Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1323-24 (Fed. Cir. 2009), as well as when it contains language that is essential to the description of the invention, see In re Bulloch, 604 F.2d 1362, 1365 (CCPA 1979) ("The introductory claim language 'stable color developer concentrate' is more than a mere

statement of purpose; and that language is essential to particularly point out the invention defined by the claims."). The preamble limits the claimed invention if it is "necessary to give life, meaning, and vitality to the claim." Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1305 (Fed. Cir. 1999); see also Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 808 (Fed. Cir. 2002) (same). Our predecessor court articulated the "life, meaning, and vitality" standard in Kropa v. Robie, 187 F.2d 150, 152 (CCPA 1951), borrowing this congenial phrase from the Seventh Circuit's decision in Schram Glass Manufacturing Co. v. Homer Brooke Glass Co., 249 F. 228, 232-33 (7th Cir. 1918). This basic rule of claim construction has never been erased, and its utility in various situations has reinforced its vitality.

Generally stated, "terms appearing in a preamble may be deemed limitations of a claim when they give meaning to the claim and properly define the invention." In re Paulsen, 30 F.3d 1475, 1479 (Fed. Cir. 1994); see also, e.g., Loctite Corp. v. Ultraseal Ltd., 781 F.2d 861, 866 (Fed. Cir. 1985) ("Although it appears in the preamble of the '012 patent claims, the term 'anaerobic' breathes life and meaning into the claims and, hence, is a necessary limitation to them."). The effect of the preamble thus varies with the way the particular invention is claimed. See Pitney Bowes, 182 F.3d at 1305 ("[A] claim preamble has the import that the claim as a whole suggests for it."). In Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc. the court observed:

> Whether a preamble stating the purpose and context of the invention constitutes a limitation of the claimed process is determined on the facts of each case in light of the overall form of the claim, and the invention as described in the specification and illuminated in the prosecution history.

98 F.3d 1563, 1572-73 (Fed. Cir. 1996); see also, e.g., Bicon, Inc. v. Straumann Co., 441 F.3d 945, 952 (Fed. Cir. 2006) ("[W]hether to treat a preamble as a claim limitation is

determined on the facts of each case in light of the claim as a whole and the invention described in the patent."); Corning Glass Works v. Sumitomo Elec. U.S.A., Inc., 868 F.2d 1251, 1257 (Fed. Cir. 1989) ("The effect preamble language should be given can be resolved only on review of the entirety of the patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim."); In re Stencel, 828 F.2d 751, 754 (Fed. Cir. 1987) ("Whether a preamble of intended purpose constitutes a limitation to the claims is, as has long been established, a matter to be determined on the facts of each case in view of the claimed invention as a whole.").

This vast body of precedent is directly contravened by today's ruling, where the panel majority discards the preamble and thereby removes limitations to the claim, and then holds the changed claim invalid. The proper analysis requires construing the claims in accordance with the rules of claim construction, that is, in light of the specification and the prosecution history. See Phillips v. AWH Corp., 415 F.3d 1303, 1312-24 (Fed. Cir. 2005) (en banc). When this inquiry reveals that "the claim drafter chooses to use both the preamble and the body to define the subject matter of the claimed invention, the invention so defined, and not some other, is the one the patent protects." Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp., 55 F.3d 615, 620 (Fed. Cir. 1995). The law of anticipation is then applied to "the invention so defined." Id.

The '448 patent specification and prosecution history make clear that the Griffins' claimed invention is not "scratch-off" technology generally, for other uses of "scratch-off" layers were known; their invention is a scratch-off label on which a user can inscribe information by scratching the surface without the need for a marking implement. The "for permitting" phrase in the preamble is the portion of the claim that makes this aspect clear.

Construing the claim without reference to this important narrowing distinction would encompass admitted prior art that was considered, and distinguished, during examination.

The '448 patent specification discusses and distinguishes earlier applications of scratch-off technology, wherein the scratch-off layer is removed to reveal information already written on the base layer. For example, U.S. Patent No. 4,846,504 to MacGregor, which discloses scratch-off coupons and lottery cards, is distinguished by the Griffins as follows:

> In construction, the "scratch-off lottery type game piece" [of MacGregor] is somewhat similar to the Scratch-Off Marking Label. However, the prior art was invented to provide manufacturers with the option of providing promotional game pieces and "cents off" coupons on products. The object of scratching the label of the "scratch-off lottery type game piece" in the prior art is to expose a hidden cents-off coupon, a winning game piece, or some other information. These promotional labels were not invented to solve the same problem that the proposed invention for a Scratch-off Marking Label seeks to solve.

'448 patent, col.1 ll. 22-33. Similarly, U.S. Patent No. 4,872,707 to deBruin, cited during examination, describes a lottery ticket in which a "pigmented layer" can be scratched off to reveal a "printed layer." '707 patent, col.6 ll.37-40. The Griffins explained that the purpose of their invention, and their manner of achieving that purpose, are quite different:

> to provide a container label which allows a simplified method (you only need your fingernail) for recording information and identification on the container, thus obviating the need for a writing implement.

'448 patent, col.1 ll.59-62.

The '448 patent specification recognizes that the differences from prior structures are "slight," stating that the Griffins' label "differs slightly from an ordinary scratch-off lottery type game piece," because "[r]ather than to scratch off the scratch-off coating in a broad area, one forms letters, numbers or figures by scratching through the coating **60** to make

easily visible lines **30**. The user can then form a name, date or some other kind of pertinent information on the label as desired." '448 patent, col.3 ll.46-52. These stated differences from the prior art require consideration during claim construction, yet are ignored by my colleagues. The panel majority opinion illustrates its incorrect construction in its table, Maj. Op. at 8, wherein the opinion compares the '448 patent's claim 1 <u>after</u> excision of the preamble clause, with the Malinovitz "parking card." Malinovitz adds nothing to the MacGregor and deBruin "lottery card" references that were cited during examination. These references were distinguished by the Griffins, on the ground of the limitations that are now stated in the preamble. The panel majority's comparison of parts of the claim with parts of references cannot provide "anticipation" of the entire claimed invention.[1]

Departing from precedent, the panel majority does not "review the entirety of the patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim," <u>Corning Glass Works</u>, 868 F.2d at 1257, and instead engrafts a meaning on the claim that the inventors did not present and the Patent Office did not examine. The majority's excision of the very portion of the claim that distinguishes the invention from the prior art, only to invalidate the claim on the basis of that prior art, is contrary to law. <u>See</u> <u>Vita-Mix</u>, 581 F.3d at 1323-24 (language in preamble is limiting where it is necessary to effectuate the patent's distinction between the invention and the prior art); <u>MBO Labs., Inc. v. Becton, Dickinson & Co.</u>, 474 F.3d 1323, 1329-30 (Fed. Cir. 2007) (same); <u>In re Cruciferous Sprout Litig.</u>, 301 F.3d 1343, 1347-48 (Fed. Cir. 2002) (same).

The panel majority acknowledges its deletion of the limitations in the preamble, protesting that the preamble "merely states the purpose or intended use" of the invention,

---

[1]    The only validity issue before us is "anticipation."

citing Bicon, 441 F.3d at 952. However, the preamble in this case is more than a mere statement of purpose or use, for the specification's description of the invention and discussion of the prior art require the features set forth in the preamble, and the prosecution record confirms the reliance on those features for patentability. The residue of claim 1, without the limitations in the preamble, does not "define a structurally complete invention." Rowe v. Dror, 112 F.3d 473, 478 (Fed. Cir. 1997). The invention claimed in the '448 patent is not completely described without the limitations in the preamble.

The Bicon case, on which the panel majority primarily relies, states that "it is not unusual for this court to treat preamble language as limiting" when the facts warrant. 441 F.3d at 952. In Bicon the court held that a "for use" preamble phrase in a claim directed to a dental implant recited essential information and thus served to limit the claim—directly contrary to the rule the panel majority seeks to extract from the case. Bicon and extensive other authority belie the majority's suggestion that preamble language is only "rarely" treated as limiting. Maj. Op. at 5. Many decisions demonstrate that purposive language in a preamble is limiting when it serves to give "life, vitality and meaning" to the claimed invention. See, e.g., General Elec. Co. v. Nintendo Co., 179 F.3d 1350, 1361-62 (Fed. Cir. 1999) (the preamble phrase "raster scan display device" limited a method for displaying computer generated information on a screen, because "[i]n light of the specification, to read the claim indiscriminately to cover all types of display systems would be divorced from reality"); Corning Glass Works, 868 F.2d at 1257 (the preamble phrase "an optical waveguide" limited claims directed to optical fibers, because "[t]he invention is restricted to those fibers that work as waveguides as defined in the specification, which is not true with respect to fibers constructed with the limitations of the [body of the claim] only"); Diversitech

Corp. v. Century Steps, Inc., 850 F.2d 675, 678 (Fed. Cir. 1988) (the phrase "a base for the support of equipment" was essential in giving meaning to the invention and therefore was limiting, and precluded a finding of anticipation); Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 896 (Fed. Cir. 1984) ("The system of claim 1 is one of unity magnification and is image forming. Those limitations appear in the preamble, but are necessary to give meaning to the claim and properly define the invention."); Stencel, 828 F.2d at 755 ("Stencel is not inhibited from claiming his driver, limited by the statement of purpose, and further defined by the remaining clauses at issue, when there is no suggestion in the prior art of a driver having the claimed structure and purpose."). The "for use" preamble phrase in Bicon, and analogous preamble language in General Electric, Corning Glass Works, Diversitech, Perkin-Elmer, Stencel, and countless other cases, have been recognized as providing essential limitations to the claim. The panel majority strays far from precedent, in holding that the Griffins' preamble must be ignored because it states a "use," and then invalidating the claim as anticipated when freed of the limitations in the preamble.

When a claim is written so that the preamble merely introduces the general subject matter, but does not state limitations of the specific invention, this debate does not arise. However, this general claim drafting style does not produce a "presumption" that preamble language is irrelevant to claim scope. Maj. Op. at 6. The cases cited by the panel majority for this proposition do not so state. See id. at 6-7 (citing Intirtool, Ltd. v. Texar Corp., 369 F.3d 1289, 1296 (Fed. Cir. 2004); Catalina, 289 F.3d at 810; and Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A., 944 F.2d 870, 880 (Fed. Cir. 1991)). These cases offer no "presumption," and do not disturb the authority that recognizes preamble language

as relevant when it serves to define and limit the claims. To the contrary, each of these cases confirms this standard, for in each case this court considered the entirety of the claim and reached a claim construction consistent with the scope of the invention set forth in the specification. See Intirtool, 369 F.3d at 1296 (holding that district court had viewed preamble language too narrowly in light of the invention that was described in the specification); Catalina, 289 F.3d at 810 (holding that "the claims, specification, and prosecution history of the '041 patent demonstrate that the preamble phrase 'located at predesignated sites such as consumer stores' is not a limitation of Claim 1," for "the applicant did not rely on this phrase to define its invention nor is the phrase essential to understand limitations or terms in the claim body"); Vaupel, 944 F.2d at 880 (holding that certain preamble language, while limiting, did not provide narrow structural limitations argued for by an accused infringer). This trio of cases does not support my colleagues' new presumptive rule that the preamble and its distinguishing limitations should be ignored. These cases do not contradict the basic apothegm that where the preamble "breathes life, meaning, and vitality" into the claim, its limitations cannot be ignored.

The specification of the '448 patent and its prosecution history point unwaveringly to the role of the preamble as defining and limiting the Griffins' invention. My colleagues misconstrue the prosecution record, for they state that "the Griffins expressly attested that the 'writing means' language was not a claim limitation." Maj. Op. at 6. The record shows that the Griffins argued that no specific "writing means" is required, and that they therefore resisted specifying any particular writing instrument; but they did not thereby remove the purpose of providing a scratch-off label that accepts writing without a particular marking instrument, and without preprinted information underneath. The specification stresses that

the goal of the invention is to provide a label that can be written on by scratching the surface—as the Griffins explained to the examiner, the label can be marked by a fingernail, coin, or whatever else is handy, and the claim states that no specific "marking implement" is required. The claim was allowed with this phrase in the last claim clause, and no objection was made by the examiner when the Griffins moved this phrase to the front of the claim. Neither the Griffins nor the examiner suggested that this movement eliminated this fundamental aspect of the invention. Whatever the intent of the Griffins, prosecuting their patent application pro se, there is no support whatsoever for the panel majority's conclusion that they "expressly attested" that they were deleting the heart of their invention from their claims after allowance.

The court's holding today distorts long-standing rules of claim interpretation, by requiring that distinctions between the invention and the prior art must be ignored when they are presented in the introductory clause of the claim. The majority's claim construction, and the ruling of anticipation based on elimination of the limitations in the preamble of the '448 patent claims, are contrary to law and precedent. I respectfully dissent.